IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT REYNOV, an individual, on behalf of himself, and on behalf of all persons similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>ADP CLAIMS SERVICES GROUP, INC., AUTOMATIC DATA PROCESSING, INC., and DOES 1 through 100,<br><br>    Defendants.<br>_____/ | No. C 06-2056 CW<br><br>ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS |

Defendant ADP Claim Services Group (CSG) has filed a motion for summary judgement pursuant to Federal Rule of Civil Procedure 56(b).[1]  Plaintiff Victor Reynov opposes the motion.  The matter was heard on April 26, 2007.  Having considered all of the papers filed by the parties and oral argument on the motion, the Court GRANTS summary judgment for Defendants.

BACKGROUND

This case arises out of a dispute regarding the exempt classification of Reynov and other senior software quality assurance (QA) engineers.  Reynov worked as a senior software QA engineer for CSG in San Ramon, California from November, 2003

---

[1] Automatic Data Processing, Inc. (ADP) is a co-defendant in this case and has filed a concurrent motion to dismiss for lack of personal jurisdiction.  The Court grants that motion in a separate order.  Summary judgment would be appropriate for Plaintiff's claims against ADP as well.

through May 20, 2005. Ware Decl. ¶ 5, 8. At that time, CSG was a wholly-owned corporate subsidiary of ADP. CSG classified Reynov as an exempt employee and paid him an annual salary of approximately $76,000. Id. According to CSG, Reynov was properly classified as an exempt employee because he performed specialized and technical work which required special training, experience and knowledge. Blazquez Decl. ¶ 9. Further, CSG argues that Reynov regularly exercised independent judgment and was only under general supervision. Id. at ¶ 8, 10.

During the first quarter of 2005, Reynov complained to attorney Scott Miller of "a number of California Labor Code Violations" related to his employment with CSG, and sought his representation. Miller Decl. ¶ 4, 5. On April 20, 2005, Reynov signed an agreement to retain Miller to represent him "in all claims for violations of the Labor Code and any other related laws against Automatic Data Processing, Inc." Meckley Decl. ¶ 4, Ex. 6.

On May 20, 2005, one month after hiring Miller to represent him, Reynov quit his job with CSG. Ware Decl. ¶ 8. On May 26, 2005, Reynov signed a "Letter Agreement and Release" (Letter Agreement) concerning his employment separation from CSG. Ex. 9. The cover letter stated that the purpose of the Letter Agreement was to provide Reynov with "certain benefits that you would not otherwise receive, and resolve any remaining issues between you and CSG." Id. According to CSG, Reynov received substantial compensation to which he was not otherwise entitled, including a severance payment in excess of $29,000. Ware Decl. ¶ 12; Ex. 9. The release in the Letter Agreement relieved CSG and its affiliates

2

from "all claims, actions, and causes of action, of every kind, nature, and description, which exist as of the date you sign this Letter Agreement, arising out of or related to your employment." Id. The release advised Reynov to consult with his attorney before signing, and granted him seven days after signing to revoke his acceptance of the agreement. Id. The release also contained an express waiver of all rights under California Civil Code § 1542. Id. Reynov does not dispute that he signed the Letter Agreement and Release.

CSG also paid Reynov his outstanding salary, unused vacation, and other wages owed him. Ware Decl. ¶ 10, 11; Ex. 1. This payment was not conditioned on his signing the Letter Agreement or Release. Id.

Miller associated other attorneys to assist him with Reynov's case. The attorneys drafted a complaint alleging violations of several California statutes based on an alleged misclassification of Reynov, and all others with his job title, as salaried exempt employees. The complaint was filed in Contra Costa County Superior Court on January 31, 2006. The case was removed to this Court on March 17, 2006. CSG now moves for summary judgment, arguing that the release waives all the claims that Reynov brought against it.

## LEGAL STANDARD

Under Rule 56, summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

3

Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

## DISCUSSION

CSG argues that when Reynov signed the Letter Agreement, he executed a valid and enforceable release of all claims, including his claim for unpaid overtime. Reynov counters that the subject of overtime pay was neither discussed nor addressed in the Letter Agreement, and therefore cannot be considered a good faith dispute that the parties compromised. Reynov also contends that he was unaware of his potential overtime claims when he signed the Letter Agreement. Finally, Reynov asserts that the release he signed was a general release that is not legally enforceable under California Labor Code § 206.5.[2]

California Labor Code § 206.5 provides:

> No employer shall require the execution of any release of any claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of such wages has been made. Any release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee and the violation of the provisions of this section shall be a misdemeanor.

Section 206.5 must be interpreted in conjunction with section 206(a), which states:

> In case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all

---

[2] Although the parties focus on section 206.5, Reynov also cites California Labor Code sections 219 and 1194(a). Section 219 provides that the provisions of Article 1 of Chapter 1 of Part 1 of Division 2 of the Labor Code, which includes § 206.5, cannot be set aside by private agreements. Section 1194(a) renders unenforceable prospective agreements to waive overtime compensation. Neither section is relevant here because the Letter Agreement does not set aside § 206.5 or waive prospective overtime compensation.

4

      wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed.

Accordingly, "in a dispute over wages the employer may not withhold wages concededly due to coerce settlement of the disputed balance. An employer and employee may of course compromise a bona fide dispute over wages but such a compromise is binding only if it is made after the wages concededly due have been unconditionally paid." Reid v. Overland Machined Products, 55 Cal. 2d 203, 207 (1961); Sullivan v. Del Conte Masonry Co., 238 Cal. App. 2d 630, 634 (1965). In Reid, the California Supreme Court rejected an argument that accord and satisfaction was shown when an employee cashed his employer's check for "concededly due" wages. Id. at 208. The court implied that acceptance of payment beyond the indisputably owed amount would have constituted a legally binding settlement of the controversy.

As this Court found in Kelley et. al. v. Pacific Telesis, et. al., No. 97-CV-02729, "nothing in § 206.5 purports to limit its scope to actions filed directly under the Labor Code. A UCL claim based on an unlawful failure to pay wages due is a claim 'on account of wages due.'" Thus, § 206.5 applies to Reynov's claims under the California Labor Code and to those under California Business and Professions Code § 17200.

Nonetheless, the release contained in the Letter Agreement is enforceable as a matter of law. The release contained an express waiver of all rights under California Civil Code § 1542, which prevents a "general release" from extending to claims unknown to the creditor at the time the release is signed. In the absence of

5

actual fraud, an express waiver of § 1542 rights is valid. <u>Pacific Greyhound Lines v. Zane et al.</u>, 160 F.2d 731, 736 (9th Cir. 1947).

Further, section 206.5 voids releases of claims "on account of wages due." Based on the abovementioned authorities, the Court finds that wages are not "due" if there is a good faith dispute as to whether they are owed. Because CSG's defense that Reynov was an exempt employee under California law would, if successful, preclude any recovery for Reynov, a bona fide dispute exists and the overtime pay cannot be considered "concededly due." <u>Sullivan</u>, 238 Cal. App. 2d at 634; <u>see</u> <u>also</u> 8 C.C.R. § 13520 (defining a "good faith dispute" concerning wages as a dispute that occurs "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee.")

As the legislative history submitted by CSG demonstrates,[3] the purpose behind § 206.5 was to prevent "unscrupulous employers," particularly in the construction industry, from withholding a worker's paycheck unless he signed a release waiving all rights to additional compensation owed. The legislation was intended to cover situations where payments in exchange for a complete release of claims were not only indisputably owed, they were often far less than the indisputably owed amount.

In this case, CSG unconditionally paid Reynov all outstanding

---

[3] The Court grants CSG's request for judicial notice of the legislative history of Labor Code § 206.5. Because the legislative history cited is easily verifiable and the content of the sources cannot reasonably be questioned, judicial notice is appropriate under FRE 201.

wages owed to him.  Additionally, he was given nearly $30,000, compensation to which he was not otherwise entitled, as consideration for releasing CSG from any and all claims he might bring.  Reynov has not raised a genuine issue of material fact suggesting that he was legally entitled to the nearly $30,000 compensation above his remaining salary and unused vacation pay, and therefore his acceptance of that payment satisfied whatever legal claims he might otherwise have brought against CSG.

    Contrary to Reynov's assertions, it is irrelevant that CSG did not specify his potential overtime claims in the language of the release.  The release also failed to specify the alleged age discrimination claim which Reynov argues was the only claim actually waived by the release.  Likewise, Reynov's argument that he was unaware of his potential overtime claims when he signed the Letter Agreement is unavailing.[4]  Rather, the crucial fact is that Reynov accepted substantial compensation to settle a bona fide dispute.

    Because the release Reynov signed is legally enforceable, Reynov's claims for compensation for overtime, waiting time, meal and rest periods and civil penalties must fail.[5]  Likewise, his

---

[4] The Court nonetheless notes that Reynov has provided evidence in a sworn declaration to this Court that he was aware of his potential overtime claims when he signed the Letter Agreement.

[5] The complaint requests penalties under California Labor Code § 558.  However, it appears that Plaintiff has not complied with the administrative requirements for bringing a civil action under § 558.  These requirements include notifying the employer by certified mail and giving the state a formal opportunity to investigate, among others.  California Labor Code § 2699.3.  Accordingly, Plaintiff cannot recover penalties under § 558.

7

second cause of action alleging that CSG engaged in unfair business practices must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS CSG's motion for summary judgment (Docket No. 50).  Judgment shall be entered accordingly.  Each party shall bear its own costs.

IT IS SO ORDERED.

Dated: 4/30/07

CLAUDIA WILKEN
United States District Judge